## UNITED STATES of America, Appellee,

v.

## Gerald J. PREVITI, Appellant.

### No. 80–5104.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1981.

Decided March 17, 1981.

Carmina Szunyog, Baltimore, Md. (Joseph F. Murphy, Jr., White & Murphy, Towson, Md., on brief), for appellant.

Elizabeth H. Trimble, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BUTZNER, SPROUSE and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Gerald J. Previti was indicted under 18 U.S.C. § 656[1] on one count of conspiracy to misapply bank funds and on four counts of aiding and abetting the misapplication of funds. Previti moved to dismiss the indictment on the ground that it failed to charge an offense. His motion was denied, and he was found guilty on all five counts. Previti appeals.

The circumstances surrounding his indictment show that for approximately a one-year period, Previti daily presented four or five checks totaling approximately $30,000 to the Provident Savings Bank. The checks were drawn on one of his accounts at Equitable Trust Company. Either the branch manager of Provident or one of two tellers would accept the personal checks and issue a manager's check for the total amount of the personal checks. The manager instructed the tellers to hold the personal checks for

---

1. This statute provides in relevant part:

Whoever, being an officer, director, agent or employee of . . . any Federal Reserve bank, member bank, national bank or insured bank . . . embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both.

one day before processing them for payment and not to enter the manager's check on the settlement records until one day after it was issued. Previti cashed the manager's check on the day he received it. Because the personal checks were drawn on another bank, there was a delay of approximately four to five days before Provident collected the funds. Provident ultimately lost a substantial amount of money when it was unable to collect on the checks that it cashed for Previti.

Previti asserts that the indictment against him was fatally defective because it merely alleged a willful misapplication of bank funds. He contends that it is necessary to allege either a conversion of Provident's funds, a loss to Provident, or an intent to defraud to sustain a charge under 18 U.S.C. § 656. Previti further asserts that there are no facts alleged in the indictment establishing an inference that the Equitable checks were worthless or that Previti converted funds for his own use to the detriment of Provident.

■ We find no merit in Previti's argument. The Federal Rules of Criminal Procedure have liberalized the requirements of a criminal indictment. Under Rule 7, an indictment is required to be a "plain, concise and definite written statement of the essential facts constituting the offense charged." We have held that Rule 7 mandates that the indictment allege each essential element of the offense as well as sufficient additional facts to allow it to be used as proof in bar of a subsequent prosecution for the same offense. *United States v. Duncan,* 598 F.2d 839, 848 (4th Cir. 1979), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). Although an indictment should allege facts sufficient to put the defendant on notice of the charges against him so that he may prepare his defense, a bill of particulars or discovery often may be used if sufficient facts are not alleged. *Id.*

■ The indictment in this case alleges every essential element of 18 U.S.C. § 656, and it sets forth facts sufficient to apprise Previti of the charges against him. The indictment uses the "misapplication" language set forth in § 656, and specifies how the misapplication occurred. "Misapplication" may have been considered in the past a vague term with no settled meaning, *see, e. g., United States v. Britton,* 107 U.S. 655, 669, 2 S.Ct. 512, 524, 27 L.Ed. 520 (1882) ("The words 'willfully misapplied' are ... new in statutes creating offenses, and they are not used in describing any offense at common law. They have no settled technical meaning like the word [ ] 'embezzle,' as used in the statutes .... They do not, therefore, of themselves fully and clearly set forth every element of the offense charged. It would not be sufficient simply to aver that the defendant 'willfully misapplied' the funds of the association."); *Johnson v. United States,* 95 F.2d 813 (4th Cir. 1938). Yet, we have come a long way since *Britton* and *Johnson.* "Willfully misapplied" is no longer a new term in statutes, and it has been interpreted frequently in the case law, *United States v. Duncan,* 598 F.2d 839, 859 (4th Cir. 1979), *cert. denied* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). The modern trend is to recognize that "willfully misapplied" does in fact have a settled meaning. *See United States v. Welliver,* 601 F.2d 203, 207–08 (5th Cir. 1979); *United States v. Duncan,* 598 F.2d 839, 859 (4th Cir. 1979), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

We are inclined to follow this trend. We hold that the indictment in this case fully comports with Rule 7 of the Federal Rules of Criminal Procedure. Accordingly, we affirm Previti's conviction.

*AFFIRMED.*